**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEAMFITTERS LOCAL 449 RETIREMENT SECURITY FUND, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>BADGER METER, INC., KENNETH C. BOCKHORST, ROBERT A. WROCKLAGE, and DANIEL R. WELTZIEN,<br><br>    Defendants. | **CASE No.: 1:26-cv-04660-VEC**<br><br>**MEMORANDUM OF LAW IN SUPPORT OF PAUL HEIDBREDER'S MOTION TO: (1) APPOINT LEAD PLAINTIFF; AND (2) APPROVE LEAD PLAINTIFF'S SELECTION OF COUNSEL**<br><br>**<u>CLASS ACTION</u>** |

Plaintiff Paul Heidbreder ("Mr. Heidbreder" or "Movant") respectfully submits this memorandum of law in support of his motion for an Order, pursuant to the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"):

(a) appointing Movant as Lead Plaintiff for the class of all purchasers or acquirers of Badger Meter, Inc. ("Badger Meter" or the "Company") common stock between April 18, 2024 and April 16, 2026, both dates inclusive (the "Class Period"); and

(b) approving Movant's selection of The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel for the Class.

## INTRODUCTION AND BACKGROUND

On June 2, 2026, this action was filed against Defendants Badger Meter, Inc., Kenneth C. Bockhorst, Robert A. Wrocklage, and Daniel R. Weltzien (collectively "Defendants"). Dkt. No. 1. That same day, an early notice pursuant to the PSLRA was issued advising class members of, among other things, the allegations and claims in the complaint, the Class Period, and class members' option to seek appointment as Lead Plaintiff. *See* Ex. 1 hereto.

Badger Meter manufactures and sells water-measurement and management products. Historically, the Company's business centered on traditional water meters used by municipal and regional utilities to measure water consumption for billing and system-management purposes. More recently, Badger Meter expanded into advanced metering infrastructure ("AMI"), which enables utilities to collect usage data remotely through communications endpoints and software platforms.

The Complaint alleges that, throughout the Class Period, Defendants misled investors concerning the drivers of Badger Meter's purportedly "record" financial results, demand for the Company's products, and its prospects for continued growth. Defendants represented that the

1

Company's results reflected "ongoing favorable industry trends," "secular growth drivers," "solid operating execution," and strong customer demand. Defendants also touted a "robust order pacing," a "strong bid pipeline," and a "long runway" for continued growth.

In truth Badger Meter's financial results did not reflect durable, demand-driven growth. Rather, the Company had pulled customer orders forward and recognized the corresponding revenue earlier, thereby concealing weakening demand and deteriorating near-term order trends while depleting revenue that otherwise would have been available in later periods.

The truth began to emerge on July 22, 2025, when Badger Meter reported disappointing second-quarter 2025 financial results, including earnings per share below consensus estimates, decelerating revenue growth, and deteriorating margins. The Company also warned that it expected absolute sales to decline sequentially during the third quarter of 2025. Defendants nevertheless attributed the results to ordinary utility replacement cycles and the timing of AMI projects, assuring investors that the Company's project funnel remained "as robust as ever" and that demand softness was "not a concern." On this news, Badger Meter's stock price fell $40.42 per share, or 16.5%, from $245.22 per share on July 21, 2025, to close at $204.80 per share on July 22, 2025.

Then, on January 28, 2026, Badger Meter reported disappointing fourth-quarter 2025 financial results, including missed revenue expectations and a 6% sequential decline in utility-water sales. Defendants continued to attribute the decline to "previously communicated project pacing effects." On this news, Badger Meter's stock price declined $18.09 per share, or 11%, from $164.41 per share on January 27, 2026, to close at $146.32 per share on January 28, 2026.

Finally, on April 17, 2026, Badger Meter reported disappointing first-quarter 2026 results, including a 9% year-over-year decline in total sales, a 10% decline in utility-water sales, operating earnings of $35.2 million compared with $49.4 million in the prior-year period, and diluted

2

earnings per share of $0.93 compared with $1.30 in the prior-year period. Although Defendants again blame "project timing," they also disclosed that "softer short-cycle municipal customer ordering" contributed to the disappointing results. Defendants further admitted that the variability in short-cycle demand had "always existed, inclusive of [the] 2023 to 2025 time frame" but claimed it was "less visible in the revenue outcomes because of the backlog condition combined with projects in flight." On this news, Badger Meter's stock price fell $36.75 per share, or more than 24%, from $152.29 per share on April 16, 2026, to close at $115.54 per share on April 17, 2026.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Badger Meter's common stock, Movant and other Class members have suffered significant losses and damages.

## ARGUMENT

### I.    MOVANT SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff" to serve as lead plaintiff is the person or group that:

(aa) has either filed the complaint or made a motion in response to a notice…;

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

As set forth below, Movant satisfies all three of these criteria, and thus is entitled to the presumption of being the "most adequate plaintiff" for the Class.

### A. Movant Is Willing to Serve as Class Representative

Movant has filed herewith a PSLRA certification attesting that Movant is willing to serve as representative of the class and remains willing to provide testimony at deposition and trial, if necessary. *See* Ex. 2 hereto. Accordingly, Movant satisfies the first requirement to serve as Lead Plaintiff for the Class.

### B. Movant Has the Largest Financial Interest in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff … is the person or group of persons that … has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). "While the PSLRA does not specify how we should decide which plaintiff group has the 'largest financial interest' in the relief sought, most courts simply determine which potential lead plaintiff has suffered the greatest total losses." *Takara Trust v. Molex*, 229 F.R.D. 577, 579 (N.D. Ill. 2005). Of the *Lax*/*Olsten*-styled[1] factors in determining the largest financial interest, the financial loss is the most significant factor. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 437 (S.D.N.Y. 2008). Indeed, "the best yardstick by which to judge 'largest financial interest' is the amount of loss, period." *In re Bally Total Fitness*, *Sec. Litig.*, 2005 WL 627960 * 4 (N.D. Ill. Mar. 15, 2005).

Movant lost approximately $4,118.36 in connection with purchases of Badger Meter common stock. *See* Ex. 3 hereto. Movant is not aware of any other movant that has suffered greater losses in Badger Meter common stock during the Class Period. Accordingly, Movant satisfies the largest financial interest requirement to be appointed as Lead Plaintiff for the class.

---

[1] *Lax v. Merch. Acceptance Corp.*, 1997 WL 461036 *5 (N.D. Ill. Aug. 11, 1997); *In re Olsten Corp. Sec. Litig.*, 3 F.Supp.2d 286, 295 (E.D.N.Y. 1998).

4

### C. Movant Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that the Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification – a *prima facie* showing that Movant will satisfy the requirements of Rule 23 is sufficient. *Fuwei Films*, 247 F.R.D. at 439 (only a *prima facie* showing is required). Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA." *In re Oxford Health Plans, Inc. Sec. Litig.,* 182 F.R.D. 42, 49 (S.D.N.Y. 1998).

#### 1.     Movant's Claims are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims and plaintiff's claims are based on the same legal theory. *See In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id*.

Here, Movant's claims are typical of the claims asserted by the Class. Movant, like all members of the Class, alleges that Defendants violated the Exchange Act by issuing false and

5

misleading statements and failing to disclose material statements about the Company's business. Movant's interests are closely aligned with the other Class members' and Movant's interests are, therefore, typical of the other members of the Class.

### 2.    Movant Is Adequate

The adequacy of representation of Rule 23 is satisfied where it is established that a representative party has the ability to represent the claims of the class vigorously, has obtained adequate counsel, and there is no conflict between a potential representative's claim and those asserted on behalf of the class. *In re Cendant Corp. Litigation*, 264 F.3d. 201, 265 (3d Cir. 2001).

Here, Movant has communicated with competent, experienced counsel concerning this case, and made this motion to be appointed as Lead Plaintiff. Movant is not aware that any conflict exists between Movant's claims and those asserted on behalf of the Class. Movant also sustained substantial financial losses from investments in Badger Meter common stock and is, therefore, extremely motivated to pursue claims in this action.

Further, Mr. Heidbreder has been investing for over 30 years. He is a semi-retired publisher and current consultant. He holds a degree in public relations from Western Michigan University.

### D.  Movant Is Presumptively the Most Adequate Plaintiff

The presumption in favor of appointing Movant as Lead Plaintiff may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa) will not fairly and adequately protect the interests of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The presumption that Movant is the most adequate Lead Plaintiff is not, therefore subject to rebuttal. Accordingly, Movant has suffered financial losses and has the largest financial interest in this case of any timely lead plaintiff.

The ability of Movant to represent the Class fairly and adequately is discussed above. Movant is not aware of any unique defenses Defendants could raise against him that would render Movant inadequate to represent the Class.

## II. MOVANT'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should only interfere with Lead Plaintiff's selection when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected Rosen Law as Lead Counsel. The firm has been actively researching Movant's and the Class's claims, including reviewing publicly available financial and other documents while gathering information in support of the claims against Defendants. Furthermore, the firm has an extensive history bringing significant recoveries to investors and is experienced in the area of securities litigation and class actions, having been appointed as lead counsel in securities class actions in this District and in other courts throughout the country. *See* Ex. 4 hereto. The firm has prosecuted numerous securities fraud class actions and other complex litigation and obtained substantial recoveries on behalf of investors.

As a result of the firm's experience in litigation involving issues similar to those raised in this action, Movant's counsel has the skill and knowledge to prosecute this action effectively and expeditiously. Thus, the Court may be assured that by approving Movant's selection of Lead Counsel, the members of the class will receive the best legal representation available.

7

## CONCLUSION

For the foregoing reasons, Movant respectfully requests the Court issue an Order: (1) appointing Movant as Lead Plaintiff of the Class; (2) approving Movant's selection of Rosen Law as Lead Counsel; and (3) granting such other relief as the Court may deem to be just and proper.

Dated: August 3, 2026

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

*/s/ Phillip Kim*
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: philkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*[Proposed] Lead Counsel for Lead Plaintiff and Class*

## CERTIFICATE OF WORD COUNT

The undersigned, counsel of record for Paul Heidbreder, certifies that this brief contains 2,124 words, which complies with the word limit of L.R. 7.1(c).

Executed on August 3, 2026

*/s/ Phillip Kim*
Phillip Kim

## CERTIFICATE OF SERVICE

I hereby certify that on August 3, 2026, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Phillip Kim*
Phillip Kim