**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEAMFITTERS LOCAL 449 RETIREMENT SECURITY FUND, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> BADGER METER, INC., KENNETH C. BOCKHORST, ROBERT A. WROCKLAGE, and DANIEL R. WELTZIEN, <br><br> Defendants. | Case No. 1:26-cv-04660-VEC <br><br> CLASS ACTION |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF CITY PENSION FUND FOR FIREFIGHTERS AND POLICE OFFICERS IN THE CITY OF TAMPA FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF ITS SELECTION OF CO-LEAD COUNSEL**

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ........................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 2

ARGUMENT ....................................................................................................................... 4

    A.    Tampa Should Be Appointed Lead Plaintiff....................................................... 4

        1.    Tampa Filed A Timely Motion ................................................................5

        2.    Tampa Believes It Has The Largest Financial Interest In The Relief Sought By The Class .................................................................................5

        3.    Tampa Otherwise Satisfies The Requirements Of Rule 23 .....................5

    B.    Tampa Selected Well-Qualified Co-Lead Counsel To Represent The Class .................. 7

CONCLUSION................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Atwood v. Intercept Pharms., Inc.*,
  299 F.R.D. 414 (S.D.N.Y. 2014) ............................................................................. 6

*Chilton v. Chiumento Grp.*,
  365 F. App'x 298 (2d Cir. 2010) ............................................................................. 4

*Li v. Spirit AeroSystems Holdings, Inc.*,
  2023 WL 6938285 (S.D.N.Y. Oct. 20, 2023) ......................................................... 6

**Statutes**

15 U.S.C. § 78u-4(a)(3)(A)(i) ................................................................................... 5

15 U.S.C. § 78u-4(a)(3)(B)(i) ............................................................................... 1, 4

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ...................................................................... 1, 4, 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb) ...................................................................... 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc) ....................................................................... 5

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) ..................................................................... 8

15 U.S.C. § 78u-4(a)(3)(B)(v) ................................................................................... 7

**Other Authorities**

H.R. Rep. No. 104-369 (1995) ............................................................................... 2, 7

S. Rep. No. 104-98 (1995) ......................................................................................... 2

**Rules**

Fed. R. Civ. P. 23(a)(4) .............................................................................................. 6

City Pension Fund for Firefighters and Police Officers in the City of Tampa ("Tampa") respectfully submits this memorandum of law in support of its motion: (1) to be appointed Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (2) for approval of its selection of Bleichmar Fonti & Auld LLP ("BFA") and Motley Rice LLC ("Motley Rice") as Co-Lead Counsel for the putative Class; and (3) for any such further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

The above-captioned securities class action alleges Badger Meter, Inc. ("Badger Meter" or the "Company") and certain of its current and former senior officers (collectively, "Defendants") defrauded investors in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).  Specifically, the action alleges that from April 18, 2024 through April 16, 2026, inclusive (the "Class Period"), Defendants misrepresented the drivers of Badger Meter's "record" financial results, demand for the Company's products, and its prospects for continued growth.

Pursuant to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as Lead Plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(i).  In that regard, the Court is to determine which movant has the "largest financial interest" in the relief sought by the Class in this litigation, and also whether such movant has made a *prima facie* showing that it is a typical and adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  For the reasons set forth below, Tampa is the "most adequate plaintiff"

by virtue of, among other things, the approximately $9.2 million in losses that it incurred on its investments in Badger Meter common stock during the Class Period.

Tampa also satisfies the relevant requirements of Rule 23 because its claims are typical of all members of the Class, and it will fairly and adequately represent the Class. Indeed, Tampa is more than adequate; it is precisely the type of institutional investor that Congress intended to lead securities class actions. *See* H.R. Rep. No. 104-369, at *34 (1995) (Conf. Rep.); S. Rep. No. 104-98, at *6 (1995). As a sophisticated institution, Tampa has significant experience serving in a fiduciary capacity and supervising the work of outside counsel which will inure to the benefit of the Class. Additionally, Tampa fully understands the Lead Plaintiff's obligations to the Class under the PSLRA, and it is willing and able to take on the responsibilities of the Lead Plaintiff to ensure the vigorous prosecution of this case. *See* Declaration of Javier Bleichmar ("Bleichmar Decl."), Ex. A.

Finally, Tampa has selected BFA and Motley Rice, law firms with significant experience working together prosecuting investment-related litigation, to serve as Co-Lead Counsel for the Class. To further demonstrate its commitment to vigorously and efficiently prosecuting this case without duplication of effort, Tampa directed its undersigned counsel to enter a proposed Joint Litigation Plan, which is submitted herewith. *See* Bleichmar Decl. Ex. B. Accordingly, Tampa respectfully requests that the Court appoint it as Lead Plaintiff and otherwise grant its motion.

## FACTUAL BACKGROUND

Badger Meter manufactures and sells water measurement and management products.[1] ¶¶2, 23. Historically, the Company's business centered on traditional water meters used by municipal and regional utilities to measure water consumption for billing and system management purposes.

---

[1] All citations to ¶__ refer to the Complaint. *See* ECF No. 1.

¶2.  Recently, Badger Meter expanded into advanced metering infrastructure ("AMI") solutions, which allows utilities to collect usage data remotely through communication endpoints and software platforms.  ¶¶2, 25.

This case arises out of Defendants' misrepresentations during the Class Period regarding the drivers of Badger Meter's "record" financial results, demand for the Company's products, and its prospects for continued growth.  ¶3.  During the Class Period, Defendants told investors that Badger Meter's strong financial results reflected "ongoing favorable industry trends," "secular growth drivers," and "solid operating execution."  ¶¶4, 29, 33.  They likewise touted "strong" demand and said they were seeing "robust order pacing and a strong bid pipeline that positions us well for continued sales and earnings growth," and that Badger Meter possessed a "long runway" for growth.  ¶¶4, 32.

In truth, rather than reflecting durable, demand-driven growth, Badger Meter's financial results were driven by the Company's practice of pulling forward customer orders, which concealed weakening demand and deteriorating near-term order trends.  ¶¶5, 52.  The truth was revealed to investors over the course of a series of disappointing quarterly financial reports between July 2025 and April 2026.

Investors began to learn the truth on July 22, 2025, when Badger Meter reported disappointing financial results for 2Q 2025, including earnings per share below consensus estimates, declining revenue growth, deteriorating margins, and warned that "we expect absolute sales to decline sequentially in the third quarter of 2025."  ¶¶6, 53.  On this news, the price of Badger Meter stock fell $40.42 per share, or 16.5%, from $245.22 per share on July 21, 2025, to close at $204.80 per share on July 22, 2025.  ¶57.

Then, on January 28, 2026, Badger Meter reported disappointing financial results for 4Q 2025, including missed revenue expectations and a "6% sequential decline in utility water sales." ¶58.  On this news, the price of Badger Meter stock declined $18.09 per share, or 11%, from $164.41 per share on January 27, 2026, to $146.32 per share on January 28, 2026.  ¶61.

Last, on April 17, 2026, Badger Meter reported disappointing 1Q 2026 financial results, including that total sales were "9% lower than the prior year[]," "[u]tility water sales declined 10% year-over-year," and "[d]iluted earnings per share (EPS) of $0.93, down from $1.30 in the first quarter of 2025."  ¶62.  Defendants again blamed "project timing" for the poor results, but also acknowledged the results were caused by "softer short-cycle municipal customer ordering."  *Id.* Defendants also revealed that the "variability" in short-cycle demand seen in 1Q 2026 "has always existed, inclusive of [the] 2023 to 2025 time frame" but claimed it was "less visible in the revenue outcomes because of the backlog condition combined with projects in flight."  ¶64.  On this news, the price of Badger Meter stock fell $36.75 per share, more than 24%, from $152.29 per share on April 16, 2026, to $115.54 per share on April 17, 2026.  ¶65.

## ARGUMENT

### A.      Tampa Should Be Appointed Lead Plaintiff

Tampa respectfully submits that it should be appointed Lead Plaintiff because it is the movant "most capable of adequately representing the interests of class members[.]"  15 U.S.C. § 78u-4(a)(3)(B)(i).  When selecting a Lead Plaintiff, the PSLRA establishes a presumption that the "most adequate plaintiff" is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Chilton v. Chiumento Grp.*, 365 F. App'x 298, 299 (2d Cir. 2010) (discussing qualifications for Lead Plaintiff presumption).  Here, Tampa believes it is the

presumptively "most adequate plaintiff" because it: (1) complied with the PSLRA's procedural requirements and filed a timely motion; (2) believes it asserts the largest financial interest in the relief sought by the Class; and (3) satisfies Rule 23's typicality and adequacy requirements.

### 1. Tampa Filed A Timely Motion

Under the PSLRA, any Class member may move for appointment as Lead Plaintiff within 60 days after "the plaintiff" publishes notice of the pendency of the action. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i). On June 2, 2026, Plaintiff Steamfitters Local 449 Retirement Security Fund filed the above captioned case. ECF No. 1 at ¶1. That same day, counsel for Steamfitters Local 449 Retirement Security Fund, BFA, published notice of the pendency of the action on *ACCESS Newswire*, which alerted investors to the pendency of the action and set the deadline to seek Lead Plaintiff status by August 3, 2026. *See* Bleichmar Decl. Ex. C. As such, Tampa's motion is timely.

### 2. Tampa Believes It Has The Largest Financial Interest In The Relief Sought By The Class

Tampa believes that it has the "largest financial interest in the relief sought by the Class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb). Tampa incurred a loss of approximately $9.2 million on its investments in Badger Meter stock during the Class Period. *See* Bleichmar Decl. Exs. A, D. To the best of Tampa's knowledge, there is no other qualified applicant seeking Lead Plaintiff appointment that has a larger financial interest in the litigation. Accordingly, Tampa has the largest financial interest of any qualified movant seeking Lead Plaintiff status and is the presumptive "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

### 3. Tampa Otherwise Satisfies The Requirements Of Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, Tampa otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). "'[A]t this stage of the litigation, the movant must only make a preliminary showing that the

adequacy and typicality requirements have been met.'" *Atwood v. Intercept Pharms., Inc.*, 299 F.R.D. 414, 416 (S.D.N.Y. 2014) (citations omitted).  Here, Tampa unquestionably satisfies both requirements.

Tampa's claims are typical of the claims of other investors in Badger Meter common stock. The typicality threshold is satisfied because Tampa's "claims and injuries arise from the same conduct from which the other class members' claims and injuries arise." *Li v. Spirit AeroSystems Holdings, Inc.*, 2023 WL 6938285, at *2 (S.D.N.Y. Oct. 20, 2023) (citation omitted).  Here, Tampa's and all other Class members' claims arise from the same course of events and their legal arguments to prove Defendants' liability are identical.  Like all other Class members, Tampa: (1) purchased Badger Meter common stock during the Class Period; (2) purchased at prices allegedly artificially inflated by Defendants' materially false and misleading statements and/or omissions; and (3) suffered damages when the truth was disclosed to the market.  *See id*.  As such, Tampa satisfies the typicality requirement.

Tampa likewise satisfies the adequacy requirement of Rule 23.  Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  The adequacy requirement is satisfied where: (1) there is no conflict between the proposed Lead Plaintiff and the members of the class; (2) the proposed Lead Plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) class counsel is qualified, experienced, and generally able to conduct the litigation.  *See Li*, 2023 WL 6938285, at *3 (adequacy satisfied where movant "has certified that he is willing to fulfill the duties of lead plaintiff," "has retained counsel with significant experience in securities fraud cases," and "there is, as yet, no indication that [movant] has any interests that are antagonistic to those of the class").

6

Tampa satisfies these elements because its substantial financial stake in the litigation provides it with the incentive to vigorously represent the Class's claims and oversee counsel. Further, Tampa's interests are aligned with those of other putative class members and are not antagonistic in any way. There are no facts to suggest any actual or potential conflict of interest or other antagonism between Tampa and the other putative Class members. Further, Tampa has significant experience serving in a fiduciary capacity and in supervising the work of outside counsel.

Indeed, Tampa—responsible for managing approximately $3.4 billion in assets for the benefit of approximately 4,000 participants, including active and retired members and beneficiaries—is precisely the type of large and sophisticated institutional investor that Congress encouraged to act as Lead Plaintiff in securities class actions. *See* H.R. Rep. No. 104-369, at *34 (1995) (Conf. Rep.), reprinted in 1995 U.S.C.C.A.N. 730, 733 (1995) ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").

Finally, Tampa has demonstrated its adequacy through its selection of BFA and Motley Rice as Co-Lead Counsel to represent the Class. As discussed more fully below, BFA and Motley Rice are highly qualified and experienced in litigating securities class actions and have successfully worked together in similar complex actions.

**B.    Tampa Selected Well-Qualified Co-Lead Counsel To Represent The Class**

The PSLRA provides that the Lead Plaintiff is to select and retain counsel to represent the Class it seeks to represent, subject to Court approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The

Lead Plaintiff's choice of counsel is not to be disturbed unless doing so is necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, Tampa selected BFA and Motley Rice to represent the Class as Co-Lead Counsel. BFA and Motley Rice have a demonstrated history of successfully prosecuting securities-related litigation together. Most recently, the firms served as Co-Lead Counsel in *In re Wells Fargo & Company Hiring Practices Derivative Litigation*, 3:22-cv-05173-TLT (N.D. Cal.), which resulted in a significant $110 million settlement, that provided $100 million in mortgage assistance to benefit low- and moderate-income borrowers and borrowers in low- and moderate-income census tracts, and required $10 million to be paid by the insurer of the Board of Director Defendants to Wells Fargo. On May 5, 2026, during the settlement approval hearing, Judge Trina L. Thompson stated that she "applaud[ed] all counsel" and that she was "floored by the work that was put into this case and particularly with my aggressive case management schedule." Judge Thompson further stated that the resolution of the case represented the "gold standard" and further discussed how the settlement agreement was "quite comprehensive" and inspired a "chill that comes across you" when considering how the arrangement "will set the foundation for generational wealth which will only enhance Wells Fargo's relationship with those in [the affected] communities."

BFA and Motley Rice also have experience working together in *In re Twitter, Inc. Securities Litigation*, No. 16-cv-05314 (N.D. Cal.), in which Motley Rice served as sole Lead Counsel and Co-Class Counsel and BFA served as Liaison Counsel. That case resolved for $809.5 million on the eve of trial in 2021. More recently, BFA and Motley Rice worked together in *In re Seagate Technology Holdings plc Securities Litigation*, No. 3:23-cv-03431-RFL (N.D. Cal.), as Co-Lead Counsel and Local Counsel, respectively, which settled for $175 million and is pending final approval.

8

BFA and Motley Rice are also qualified in their own right. BFA's partners have served as Lead and Co-Lead Counsel on behalf of dozens of investors in securities class actions and have secured significant recoveries on behalf of investors in some of the most prominent fraud cases in recent decades. *See* Bleichmar Decl. Ex. E. For example, BFA recently achieved a $420 million resolution on behalf of investors in *Ontario Teachers' Pension Plan Board v. Teva Pharmaceutical Industries Ltd.*, No. 3:17-cv-00558-SRU (D. Conn.). Previously, in this District, BFA secured a $234 million resolution for the benefit of the class in *In re MF Global Holdings Ltd. Securities Litigation*, No. 1:11-cv-07866-VM (S.D.N.Y.), as well as a $120 million recovery in *Freedman v. Weatherford International Ltd.*, No. 1:12-cv-02121-LAK (S.D.N.Y.).

Similarly, Motley Rice has extensive experience serving as Lead and Co-Lead Counsel on behalf of classes of investors. In addition to *Twitter* and *Seagate*, Motley Rice achieved a $140 million resolution on behalf of investors in *In re Barrick Gold Securities Litigation*, No. 1:13-cv-03851-RPP (S.D.N.Y.); $131 million resolution in *Bennett v. Sprint Nextel Corp.*, No. 2:09-cv-02122-EFM-KMH (D. Kan.); and $125 million resolution in *Boston Retirement System v. Alexion Pharmaceuticals, Inc.*, No. 3:16-cv-02127 (AWT) (D. Conn.).

Before the filing of this motion, and consistent with Tampa's obligation to oversee the prosecution of this action, Tampa directed BFA and Motley Rice to enter a Joint Litigation Plan describing how proposed Co-Lead Counsel will share litigation responsibilities and ensure that this case is litigated efficiently without duplication of effort. *See* Bleichmar Decl. Ex. B. Tampa also directed its outside fiduciary counsel, Klausner, Kaufman, Jensen & Levinson, to enter the Litigation Plan. The Litigation Plan demonstrates that counsel are each committed to vigorously prosecuting this case and sharing their collective resources while ensuring that the matter proceeds without undue cost or delay, yielding the best possible result for the putative Class. *See generally*

*id.* Thus, the Court may be assured that by granting this motion, the Class will receive the highest caliber of legal representation.

## CONCLUSION

For the reasons discussed above, Tampa respectfully requests that the Court: (1) appoint it to serve as Lead Plaintiff; (2) approve its selection of BFA and Motley Rice as Co-Lead Counsel for the putative Class; and (3) grant any such further relief as the Court may deem just and proper.

Dated: August 3, 2026

**BLEICHMAR FONTI & AULD LLP**

*/s/ Javier Bleichmar*
Javier Bleichmar
300 Park Avenue, Suite 1301
New York, New York 10022
Telephone: (212) 789-1341
Facsimile: (212) 205-3960
jbleichmar@bfalaw.com

*Counsel for Proposed Lead Plaintiff, City Pension Fund for Firefighters and Police Officers in the City of Tampa, and Proposed Co-Lead Counsel for the Class*

**KLAUSNER, KAUFMAN, JENSEN & LEVINSON**
Robert D. Klausner (*pro hac vice* forthcoming)
7080 Northwest 4th Street
Plantation, Florida 33317
Telephone: (954) 916-1202
bob@robertdklausner.com

*Additional Counsel for Proposed Lead Plaintiff, City Pension Fund for Firefighters and Police Officers in the City of Tampa*

Respectfully submitted,

**MOTLEY RICE LLC**

Serena P. Hallowell
800 Third Ave., Ste. 2401
New York, New York 10022
Telephone: (212) 577-0040
Facsimile: (212) 577-0054
shallowell@motleyrice.com

*Counsel for Proposed Lead Plaintiff, City Pension Fund for Firefighters and Police Officers in the City of Tampa, and Proposed Co-Lead Counsel for the Class*

10

## CERTIFICATION OF WORD-COUNT COMPLIANCE

The undersigned hereby certifies that the foregoing brief complies with the word limit set forth in Local Civil Rule 7.1(c).  The word count, exclusive of the caption, any index, table of contents, table of authorities, signature blocks, or any required certificates, is 2,772 according to the word-processing system used to prepare the document.


Dated: August 3, 2026                                    _/s/ Javier Bleichmar_____
                                                         Javier Bleichmar

11