UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STEAMFITTERS LOCAL 449 RETIREMENT SECURITY FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>          Plaintiff,<br><br>   v.<br><br>BADGER METER, INC., KENNETH C. BOCKHORST, ROBERT A. WROCKLAGE, and DANIEL R. WELTZIEN,<br><br>          Defendants. | Case No.: 1:26-cv-04660-VEC<br><br>CLASS ACTION<br><br>MEMORANDUM OF LAW IN SUPPORT OF MOVANTS ASHOK SHAH AND MITA SHAH'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF SELECTION OF COUNSEL |

Movants Ashok Shah and Mita Shah ("Movants") respectfully submit this Memorandum of Law in support of Movants' Motion for: (i) appointment as Lead Plaintiffs in the above-captioned action pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4; and (ii) approval of Movants' selection of Robbins LLP ("Robbins") as Lead Counsel and Johnson Fistel, PLLP ("Johnson Fistel") as Liaison Counsel for Lead Plaintiffs and the proposed class.

## I.    INTRODUCTION

Movants[1] seek appointment as Lead Plaintiffs in this is securities class action lawsuit (the "Action") on behalf of acquirers of Badger Meter, Inc. ("Badger Meter " or the "Company") common stock between April 18, 2024, and April 16, 2026, inclusive (the "Class Period").  The Action is seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

Under the PSLRA, the Court is tasked with appointing the Lead Plaintiff in the Action. The PSLRA governs the selection of the lead plaintiff in class actions asserting claims under the Exchange Act.  Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant: (i) making a timely motion under the PSLRA's sixty-day deadline; (ii) who asserts the largest financial interest in the litigation; and (iii) who also satisfies the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii).  Movants meet these requirements, because: (i) Movants timely filed for appointment as Lead Plaintiffs; (ii) to the best of their knowledge, Movants have the largest financial interest in this litigation; and (iii) Movants meet the applicable requirements under Rule 23.  *See id.*; *infra* Section III.A.

---

[1] For avoidance of doubt as to their pre-existing relationship, the Movants are married.

Finally, the Court should approve Movants' choice of Lead and Liaison Counsel. Movants have retained experienced and competent counsel. As the "most adequate plaintiff" under the PSLRA, the Court should defer to Movants' selection of Robbins as Lead Counsel and Johnson Fistel as Liaison Counsel for the class and should be approved. *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

## II.    FACTUAL BACKGROUND

Badger Meter is incorporated and has principal executive offices located in Wisconsin. The Company manufactures and sells water measurement and management products. Specifically, Badger Meter collects usage data remotely through communication endpoints and software platforms through its expansion into advanced metering infrastructure solutions. In the past, the Company's business centered on traditional water meters used by municipal and regional utilities to measure water consumption for billing and system management purposes. The Company's shares trade on the New York Stock Exchange ("NYSE") under the ticker symbol "BMI."

The Action alleges that throughout the Class Period, defendants made materially false and misleading statements regarding the Company's business, operational, and financial results. Specifically, defendants made false and misleading statements and failed to disclose to investors that Badger Meter's financial results during the Class Period were at least partially attributable to the Company's practice of pulling-forward customer orders to recognize revenue early, which concealed weakening demand and deteriorating near-term order trends. This practice also depleted revenue otherwise available for future periods, ultimately causing the disappointing financial results the Company later reported. As a result of the foregoing, defendants' positive statements about the Company's business, operations, and financials were materially misleading and/or lacked a reasonable basis in fact.

This case arises from defendants telling investors that Badger Meter's strong financial

results reflected "ongoing favorable industry trends," "secular growth drivers," and "solid operating execution" during the Class Period. They likewise touted "strong" demand and said they were seeing "robust order pacing and a strong bid pipeline that positions us well for continued sales and earnings growth," and that Badger Meter possessed a "long runway" for growth.

In truth, rather than reflecting durable, demand-driven growth, Badger Meter's financial results were driven by the Company's practice of pulling-forward customer orders, which concealed weakening demand and deteriorating near-term order trends.

Beginning on July 22, 2025, Badger Meter made a series of corrective disclosures but obscured the full truth. The full truth emerged when, on April 17, 2026, Badger Meter reported disappointing 1Q 2026 financial results including that total sales were "9% lower than the prior year[]," "[u]tility water sales declined 10% year-over-year," "[o]perating earnings of $35.2 million, with an operating margin of 17.4%, compared to operating earnings of $49.4 million and an operating margin of 22.2% in the prior year," and "[d]iluted earnings per share (EPS) of $0.93, down from $1.30 in the first quarter of 2025." Defendants again blamed "project timing," but also disclosed that "softer shortcycle municipal customer ordering" contributed to the disappointing financial results. Defendants also revealed that the "variability" in short-cycle demand seen in 1Q 2026 "has always existed, inclusive of [the] 2023 to 2025 time frame" but claimed it was "less visible in the revenue outcomes because of the backlog condition combined with projects in flight."

On this news, the price of Badger Meter stock fell $36.75 per share, more than 24%, from $152.29 per share on April 16, 2026, to $115.54 per share on April 17, 2026, on unusually heavy trading volume, damaging stockholders.

## III.   ARGUMENT

### A.   Movants Should Be Appointed Lead Plaintiffs

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each

private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(1); *see also* 15 U.S.C. §78u-4(a)(3)(B)(i).

First, following the filing of the action, the plaintiff or plaintiffs should cause publication of a notice to the class within twenty days of filing the action informing class members of the following: (i) the pendency of the action; (ii) the claims asserted therein; (iii) the purported class period; and (iv) the right to move the Court to be appointed as Lead Plaintiff within sixty days of the publication of the notice.  15 U.S.C. §78u-4(a)(3)(A)(i).  Here, the relevant notice was published in *ACCESS Newswire*.  *See* Declaration of Ralph M. Stone in Support of Movants Ashok Shah and Mita Shah's Motion for Appointment as Lead Plaintiffs and Approval of Selection of Counsel ("Stone Decl."), Ex. A, filed concurrently herewith.  Within sixty days after publication of the notice, any "person" or "group of persons" who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action.  *See* 15 U.S.C. §78u-4(a)(3)(A)-(B).

Second, the PSLRA provides that within ninety days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as Lead Plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members.  *See* 15 U.S.C. §78u-4(a)(3)(B).  In determining the "most adequate plaintiff," the PSLRA provides that the Court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is:

the person or group of persons that-

    (aa)    has either filed the complaint or made a motion in response to a notice ... ;

    (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

   (cc)  otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).

   **1.**  **This Motion Is Timely**

The notice published by the plaintiff in this Action informed class members that the deadline to move for appointment as Lead Plaintiff is August 3, 2026; therefore, this motion is timely. Thus, Movants have complied with the PSLRA's first requirement and are entitled to be considered for appointment as Lead Plaintiffs.

   **2.**  **Movants Have the Largest Financial Interest in the Relief Sought by the Class**

To be eligible for the "most adequate plaintiff" presumption, a movant must also possess the "largest financial interest in the relief sought by the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb). "The PSLRA does not define the term 'largest financial interest' nor provide a method for determining which plaintiff has the largest financial interest in the relief sought by the class." *Vladimir v. Bioenvision, Inc.*, No. 07 Civ. 6416(SHS)(AJP), 2007 WL 4526532, at *4 (S.D.N.Y. Dec. 21, 2007). "Courts in the Second Circuit have developed a four-factor test focusing on: (1) the total number of shares purchased (or sold) during the class period; (2) the number of net shares purchased (or sold) during the class period (i.e., the difference between the number of shares purchased (or sold) and the number of shares sold (or purchased)); (3) the total net funds expended during the class period (i.e., the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate loss suffered during the class period." *Id.* (citations omitted); *David v. Brit. Am. Tobacco P.L.C.*, No. 24-CV-517(AMD)(MMH), 2024 WL 4351311, at *4 (E.D.N.Y. Sept. 30, 2024). "Most crucial to the Court's determination is the fourth factor—the approximate financial loss suffered." *Parot v. Clarivate Plc*, No. 22-CV-394 (ARR), 2022 WL 1568735, at *5 (E.D.N.Y.

May 18, 2022); *Peifa Xu v. Gridsum Holding Inc.*, No. 18 Civ. 3655 (ER), 2018 WL 4462363, at *3 (S.D.N.Y. Sept. 17, 2018) ("Of these factors, courts have consistently held that the fourth, the magnitude of the loss suffered, is most significant.") (Citations omitted).

Under this rubric, Movants' financial interest in the relief sought by the class here, is as follows:

| Shares Purchased: | Net Shares Purchased: | Net Funds Expended: | Losses: |
|---|---|---|---|
| 220 | 220 | $43,115 | $14,815.03 |

*See* Stone Decl., Ex. C.  To the best of Movants counsel's knowledge, their financial interest in this matter is the largest of any known lead plaintiff movants.  Therefore, Movants satisfy the PSLRA's prerequisite of having the largest financial interest.

### 3.    Movants Otherwise Satisfies Rule 23 of the Federal Rules of Civil Procedure

In addition to possessing a significant financial interest, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C.  §78u-4(a)(3)(B)(iii)(I)(cc).   Rule 23 requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class; and [that] the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(3)-(4).

"In a PSLRA motion to appoint lead plaintiff, the Court considers only whether the proposed plaintiff has made a 'preliminary showing' that two of Rule 23's requirements—typicality and adequacy—are satisfied."  *Brit. Am. Tobacco P.L.C.*, 2024 WL 4351311, at *5 (citations omitted); *see also Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007) *on reconsideration in part sub nom.  In re IMAX Sec. Litig.*, No. 06 Civ. 6128 (NRB), 2009 WL 1905033 (S.D.N.Y. June 29, 2009) (cited approvingly by *Goldstein v. Puda Coal, Inc.*, 827 F. Supp. 2d 348, 352-53 (S.D.N.Y. 2011)).  "Further, at this stage of litigation, only a preliminary showing of typicality and

adequacy is required." *Id.* (citing *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 102 (S.D.N.Y. 2005)).

Under Rule 23(a), "[t]he typicality requirement is satisfied when the claims of the proposed lead plaintiff 'arise from the same conduct from which the other class members' claims and injuries arise.'" *Linn v. Allied Irish Banks, PLC*, No. 02 Civ. 1738 (DAB), 2004 WL 2813133, at *5 (S.D.N.Y. Dec. 8, 2004) (citation omitted).  Typicality exists even if there are some factual distinctions between the claims of the named plaintiff and those of other class members.  *In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 280 (S.D.N.Y. 2003) (noting that "[t]he factual background of each named plaintiff's claim need not be identical to that of all of the class members as long as the disputed issue of law or fact occup[ies] essentially the same degree of centrality to the named plaintiff's claim as to that of other members of the proposed class") (citations and internal quotations omitted).

Here, Movants satisfy the typicality requirement for purposes of selecting a Lead Plaintiff because, like other class members, Movants: (i) purchased Badger Meter securities during the Class Period; (ii) paid allegedly inflated prices because of claimed false and misleading statements by defendants; and (iii) thereby suffered damages.  Thus, Movants' claims are typical of those of other class members since Movants' claims and the claims of other class members arise out of the same course of events.

"The adequacy requirement is satisfied where '(1) class counsel is qualified, experienced and generally able to conduct the litigation; (2) the class members' interests are not antagonistic to one another; and (3) the [proposed lead plaintiff and] class [have] a sufficient interest in the outcome of the case to ensure vigorous advocacy.'" *Yang v. Tr. for Advised Protfolios [sic]*, No. 21-CV-1047 (FB)(MMH), 2022 WL 970772, at *4 (E.D.N.Y. Mar. 31, 2022) (citations

omitted).  Movants are adequate Lead Plaintiffs.  Movants' interest in aggressively pursuing the claims against defendants is aligned with the interests of the members of the class who were similarly harmed as a result of defendants' false and misleading statements.  There is no antagonism between Movants' interest and those of the other members of the class and there is nothing to indicate that Movants will do anything but vigorously pursue the claims on behalf of the class.  In addition, Movants have submitted certifications detailing their investments in Badger Meter during the Class Period and their willingness to discharge the obligations of class representatives in this Action.  *See* Stone Decl., Ex. B.

In addition, as described below, Movants have selected and retained highly competent counsel with significant experience in class action and securities litigation to represent the class.  All of these factors sufficiently evidence Movants' satisfaction of the Rule 23 requirements and capacity and willingness to serve as Lead Plaintiffs.

**B.      The Court Should Approve Movants' Selection of Counsel**

The PSLRA vests authority in the Lead Plaintiff to select and retain Lead Counsel, subject to this Court's approval.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).  This Court should not disturb the Lead Plaintiffs' choice of counsel unless it is necessary to "protect the interests of the class."  15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa).  Movants have selected Robbins to serve as Lead Counsel and Johnson Fistel as Liaison Counsel.

Robbins is a nationally-recognized shareholder rights firm focusing its practice on complex shareholder litigation.  *See* Stone Decl., Ex. D.  Robbins' attorneys have secured impressive recoveries in shareholder rights' actions.  For example, earlier this year Robbins served as sole Lead Counsel in the derivative action, *Himstreet v. Scharf*, No. CGC-22-599223 (Cal. Super. Ct., S.F. Cty.), and secured a $100 million settlement, the largest cash payment made directly to a company in a shareholder derivative action in California state court history (and the thirteenth

largest such payment in a derivative settlement in any jurisdiction). Robbins also recently secured a $21 million settlement on behalf of investors as Co-Lead Counsel in *In Re GeneDx de-SPAC Litigation*, C.A. No. 2023-0140-PAF (Del. Ch. Dec. 2, 2024) and served as Lead Counsel in a securities fraud class action *In re Titan*, *Inc*. *Sec*. *Litig*., No. 04-CV-0676-LAB (S.D. Cal. Dec. 20, 2005), which settled for $61.5 million. Johnson Fistel is similarly well-qualified to serve as Liaison Counsel. Johnson Fistel has significant experience in complex class and multiparty actions. *See* Stone Decl., Ex. E.

Based on these qualifications, the Court may be assured that the members of the class will receive the highest caliber of legal representation available from Robbins and Johnson Fistel if this motion is granted. Accordingly, Movants' selection of counsel should be approved.

## IV.   CONCLUSION

Movants have satisfied each of the PSLRA's requirements for appointment as Lead Plaintiffs. As such, Movants respectfully request that the Court appoint them as Lead Plaintiffs, approve their selection of Robbins as Lead Counsel and Johnson Fistel as Liaison Counsel for Lead Plaintiffs and the proposed class, and grant such other relief as the Court may deem just and proper.

Dated: August 3, 2026

Respectfully submitted,

JOHNSON FISTEL, PLLP

/s/*Ralph M. Stone*
RALPH M. STONE
620 Fifth Avenue, 2nd Floor
New York, NY 10020
Telephone: (212) 292-5690
Facsimile: (619) 363-8326
E-mail: ralphs@johnsonfistel.com

*Counsel for Movants Ashok Shah and Mita Shah and [Proposed] Liaison Counsel*

ROBBINS LLP
BRIAN J. ROBBINS
CRAIG W. SMITH
5060 Shoreham Place, Suite 300
San Diego, CA 92122
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
E-mail: brobbins@robbinsllp.com
         csmith@robbinsllp.com

*Counsel for Movants Ashok Shah and Mita
Shah and [Proposed] Lead Counsel*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel for Movants certifies that this brief contains 2,624 words, which complies with the word limit of L.R. 7.1(c).

Executed on August 3, 2026.

/s/*Ralph M. Stone*
RALPH M. STONE

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on August 3, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the Court's electronic mail notice list.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 3, 2026.

/s/*Ralph M. Stone*
RALPH M. STONE