**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEAMFITTERS LOCAL 449 RETIREMENT SECURITY FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>   Plaintiff,<br><br>  v.<br><br>BADGER METER, INC., KENNETH C. BOCKHORST, ROBERT A. WROCKLAGE, and DANIEL R. WELTZIEN,<br><br>   Defendants. | Case No.  1:26-cv-04660-VEC |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF**
**THE NOVA SCOTIA PUBLIC SERVICE SUPERANNUATION PLAN AND THE NOVA**
**SCOTIA TEACHERS' PENSION PLAN FOR APPOINTMENT AS LEAD PLAINTIFFS**
**<u>AND APPROVAL OF SELECTION OF LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ........................................................................................ 1

II.   STATEMENT OF ALLEGED FACTS ............................................................................ 3

III.  ARGUMENT ................................................................................................................... 6

      A.    THE NOVA SCOTIA PLANS SHOULD BE APPOINTED LEAD
            PLAINTIFFS ........................................................................................................ 6

            1.    The Nova Scotia Plans Are Willing to Serve as Class Representatives ..... 7

            2.    The Nova Scotia Plans are the Most Adequate Plaintiffs Within the
                PSLRA's Meaning ...................................................................................... 9

                  a.    The Nova Scotia Plans Have the "Largest Financial Interest" in
                        the Action ..................................................................................... 9

                  b.    The Nova Scotia Plans Otherwise Satisfy Rule 23's
                        Requirements ............................................................................... 10

            3.    The Presumption Favoring the Nova Scotia Plans Cannot Be
                Rebutted .................................................................................................... 13

      B.    LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE
            APPROVED ........................................................................................................ 14

IV.   CONCLUSION ............................................................................................................... 15

CERTIFICATE OF WORD COUNT ....................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*,
141 F.R.D. 229 (S.D.N.Y. 1992) ........................................................................................11

*Chahal v. Credit Suisse Grp. AG*,
No. 18-CV-2268 (AT) (SN), 2018 WL 3093965 (S.D.N.Y. June 21, 2018)...........................10

*Dookeran v. Xunlei Ltd.*,
No. 18-cv-467 (RJS), 2018 WL 1779348 (S.D.N.Y. Apr. 12, 2018) ......................................12

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) ........................................................................................12

*Glauser v. EVCI Career Colleges Holding Corp.*,
236 F.R.D. 184 (S.D.N.Y. 2006) .....................................................................................3, 13

*In re Braskem S.A. Sec. Litig.*,
15 Civ. 5132 (PAE), 15 Civ. 5183 (PAE), 2015 WL 5244735 (S.D.N.Y. Sept. 8, 2015).......13

*In re Doral Fin. Corp. Sec. Litig.*,
414 F. Supp. 2d 398 (S.D.N.Y. 2006)..................................................................................13

*In re Drexel Burnham Lambert Grp., Inc.*,
960 F.2d 285 (2d Cir. 1992)................................................................................................11

*In re Emergent Biosolutions, Inc. Sec. Litig.*,
No. 8:21-CV-00955-DLB, 2025 WL 654108 (D. Md. Feb. 27, 2025)...................................14

*In re Orion Sec. Litig.*,
No. 08 Civ. 1328 (RJS), 2008 WL 2811358 (S.D.N.Y. July 7, 2008) ...................................11

*In re Oxford Health Plans, Inc. Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) ..........................................................................................11

*In re Veeco Instruments, Inc.*,
233 F.R.D. 330 (S.D.N.Y. 2005) .....................................................................................3, 13

*Janbay v. Canadian Solar, Inc.*,
272 F.R.D. 113 (S.D.N.Y. 2010) ........................................................................................11

*Kaplan v. Gelfond*,
240 F.R.D. 88 (S.D.N.Y. 2007) ..........................................................................................11

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
    311 F.R.D. 373 (S.D.N.Y. 2015) ..................................................................................14

*Lax v. First Merchants Acceptance Corp.*,
    No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 11, 1997) ..............................................9, 10

*Micholle v. Ophthotech Corp.*, Nos. 17-CV-210 (VSB), 17-CV-1758 (VSB),
    2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) ..............................................................3, 13

*Nurlybaev v. ZTO Express (Cayman) Inc.*,
    No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769 (S.D.N.Y. Nov. 13, 2017) .......................10

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
    229 F.R.D. 395 (S.D.N.Y. 2004) ..................................................................................10

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008)............................................................................14

## **Statutes**

15 U.S.C. §78u-4(a)(3) ...............................................................................................................1

15 U.S.C. §78u-4(a)(3)(A)(i)(II)...............................................................................................6

15 U.S.C. §78u-4(a)(3)(B) ......................................................................................................6, 9

15 U.S.C. §78u-4(a)(3)(B)(i) ...............................................................................................1, 6, 9

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) ..............................................................................................1

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb) ....................................................................................9, 10

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).........................................................................................10

15 U.S.C. §78u-4(a)(3)(B)(iii)(II).............................................................................................13

15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa) .......................................................................................14

15 U.S.C. §78u-4(a)(3)(B)(v) ....................................................................................................14

Nova Scotia Pension Services Corporation Act and Public Service
Superannuation Act....................................................................................................................7

Nova Scotia Pension Services Corporation Act and Teachers' Pension Act .................................7

Private Securities Litigation Reform Act of 1995 ....................................1, 2, 3, 6, 7, 8, 11, 12, 13

Securities Exchange Act of 1934.................................................................................1, 9, 11

**<u>Rules</u>**

Fed. R. Civ. P. 23 .............................................................................................1, 2, 6, 7, 10, 11, 12

The Nova Scotia Public Service Superannuation Plan ("PSSP") and the Nova Scotia Teachers' Pension Plan ("TPP" and, together with PSSP, the "Nova Scotia Plans") respectfully submit this memorandum of law in support of their motion, pursuant to §21D(a)(3) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), for an Order: (1) appointing the Nova Scotia Plans as Lead Plaintiffs on behalf of a class (the "Class") consisting of persons and entities that purchased or otherwise acquired Badger Meter, Inc. ("Badger Meter") common stock between April 18, 2024 and April 16, 2026, inclusive (the "Class Period"); and (2) approving the Nova Scotia Plans' selection of Pomerantz LLP ("Pomerantz") as Lead Counsel for the Class.

## I.    PRELIMINARY STATEMENT

The initial complaint (ECF 1) ("Complaint") in the Action, filed by a different investor, alleges that Badger Meter, its CEO Kenneth C. Bockhorst, its CFO Daniel R. Weltzien, and its former CFO Robert A. Wrocklage (altogether, "Defendants") violated Exchange Act §§10(b) and 20(a), damaging defrauded Badger Meter investors, including the Nova Scotia Plans, following the alleged fraud's disclosure, which caused the price of Badger Meter common stock to fall sharply.

Pursuant to the PSLRA, the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members (hereinafter…the 'most adequate plaintiff')."  15 U.S.C. §78u-4(a)(3)(B)(i).  The PSLRA creates a rebuttable presumption favoring the movant that, "in the determination of the court, has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).

1

The Nova Scotia Plans believe themselves to be the "most adequate plaintiffs" within the PSLRA's meaning and believe they should therefore be appointed to serve as Lead Plaintiffs. During the Class Period, the Nova Scotia Plans, in the aggregate: (1) purchased or acquired 7,810 shares of Badger Meter common stock; (2) purchased or acquired 0 net shares of Badger Meter common stock (having sold all of their Badger Meter holdings after the first of three alleged corrective disclosures dated July 22, 2025, at which time they held 6,220 shares of Badger Meter common stock); (3) expended $264,591 in net funds on Badger Meter common stock; and (4) incurred losses of approximately $264,591.[1]  *See* Declaration of Matthew L. Tuccillo in Support of Motion ("Tuccillo Decl."), Exhibit ("Ex.") A.  Accordingly, the Nova Scotia Plans believe that they have the largest financial interest in the relief sought.

Beyond their considerable financial interest, the Nova Scotia Plans also meet Rule 23's applicable requirements because their claims are typical of absent Class members, and they will fairly and adequately represent the Class's interests.  As sophisticated institutional investors, the Nova Scotia Plans are paradigmatic lead plaintiffs under the PSLRA, and their appointment would advance its legislative purpose of "increasing the role of institutional investors in class actions" to "benefit shareholders and assist courts by improving the quality of representation in securities class actions." H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* U.S.C.C.A.N. 730, 733.  Indeed, Congress specifically highlighted the unique role of pension funds, whose beneficiaries are themselves small investors, as particularly suited to lead securities class actions and protect class member interests.  *Id.*  For this reason, courts in the Second Circuit, and this Judicial District, strongly prefer appointment of institutional investors to lead complex securities class actions.  *See,*

---

[1]    The Nova Scotia Plans' losses are the same calculated on either a first-in, first-out ("FIFO") or last-in, first-out ("LIFO") basis.

*e.g.*, *Glauser v. EVCI Career Colleges Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006) ("[T]he PSLRA was passed…to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one.") (quoting *In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 332-33 (S.D.N.Y. 2005)); *Micholle v. Ophthotech Corp.*, Nos. 17-CV-210 (VSB), 17-CV-1758 (VSB), 2018 WL 1307285, at *6 (S.D.N.Y. Mar. 13, 2018) ("[C]ourts have a preference for appointing institutional investors as lead plaintiffs.").

To fulfill their obligations as Lead Plaintiffs and vigorously prosecute the Action on the Class's behalf, the Nova Scotia Plans have selected Pomerantz to serve as Lead Counsel for the Class. Pomerantz is highly experienced in the areas of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume and discussed below.

The Nova Scotia Plans respectfully ask the Court to enter an Order appointing them Lead Plaintiffs for the Class and approving their selection of Pomerantz as Lead Counsel for the Class.

## II.    STATEMENT OF ALLEGED FACTS

Badger Meter manufactures and sells water measurement and management products. ¶¶2, 23.[2] Historically, Badger Meter's business centered on traditional water meters used by municipal and regional utilities to measure water consumption for billing and system management purposes. *Id.* Recently, Badger Meter expanded into advanced metering infrastructure ("AMI") solutions, which allows utilities to collect usage data remotely through communication endpoints and software platforms. ¶¶2, 25.

As alleged in the Complaint, this case arises from Defendants' misrepresentations during the Class Period regarding the drivers of Badger Meter's "record" financial results, demand for its

---

[2]    All "¶" cites herein are to the Complaint's numbered paragraphs.

3

products, and its prospects for continued growth. ¶3. During the Class Period, Defendants told investors that Badger Meter's strong financial results reflected "ongoing favorable industry trends," "secular growth drivers," and "solid operating execution." ¶¶4, 29, 31-33, 36. They likewise touted "strong" demand and said they were seeing "robust order pacing and a strong bid pipeline that positions us well for continued sales and earnings growth," and that Badger Meter possessed a "long runway" for growth. ¶¶4, 29, 32.

In truth, rather than reflecting durable, demand-driven growth, Badger Meter's financial results allegedly were driven by its practice of pulling forward customer orders, which concealed weakening demand and deteriorating near-term order trends. ¶5. As alleged, the truth began to be revealed to investors over the course of a series of disappointing quarterly financial reports between July 2025 and April 2026. ¶¶5, 53-65.

On July 22, 2025, Badger Meter reported disappointing financial results for 2Q 2025, including earnings per share below consensus estimates, declining revenue growth, and deteriorating margins, while warning "we expect absolute sales to decline sequentially in the third quarter of 2025." ¶¶6, 53. Instead of acknowledging that the poor results reflected an exhaustion of previously pulled-forward revenue, Defendants said it was "simply the nature of the business" and blamed a gap caused by the completion of certain large AMI projects and delays in the start of others while claiming "our funnel remains as robust as ever" and demand softness was "not a concern." ¶¶6, 54, 56. Despite Defendants' assurances, on this news, Badger Meter's stock price fell $40.42 per share, or 16.5%, from $245.22 per share on July 21, 2025, to $204.80 per share on July 22, 2025, on unusually heavy trading volume. ¶¶7, 57.

Next, on January 28, 2026, Badger Meter reported disappointing financial results for 4Q 2025, including missed revenue expectations and a "6% sequential decline in utility water sales."

¶¶10, 58.  However, Defendants continued to blame the poor results on "previously communicated project pacing effects."  *Id.*  On this news, Badger Meter's stock price declined $18.09 per share, or 11%, from $164.41 per share on January 27, 2026, to $146.32 per share on January 28, 2026, on unusually heavy trading volume.  ¶11, 61.

Finally, on April 17, 2026, Badger Meter reported disappointing 1Q 2026 financial results including that total sales were "9% lower than the prior year[]," that "[u]tility water sales declined 10% year-over-year," that "[o]perating earnings [were] $35.2 million, with an operating margin of 17.4%, compared to operating earnings of $49.4 million and an operating margin of 22.2% in the prior year," and that "[d]iluted earnings per share (EPS) [were] $0.93, down from $1.30 in the first quarter of 2025."  ¶¶10, 62.  Defendants again blamed "project timing," but also disclosed that "softer short-cycle municipal customer ordering" contributed to the disappointing financial results.  *Id.*  Defendants also revealed that the "variability" in short-cycle demand seen in 1Q 2026 "has always existed, inclusive of [the] 2023 to 2025 time frame," but claimed it was "less visible in the revenue outcomes because of the backlog condition combined with projects in flight."  ¶¶10, 64.  On this news, Badger Meter's stock price fell $36.75 per share, more than 24%, from $152.29 per share on April 16, 2026, to $115.54 per share on April 17, 2026, on unusually heavy trading volume.  ¶¶11, 65.

As a result of Defendants' allegedly wrongful acts and omissions, and the precipitous alleged declines in the market value of Badger Meter's stock, the Nova Scotia Plans and other Class members have suffered significant losses and damages.  ¶¶12, 76.

## III.    ARGUMENT

### A.    THE NOVA SCOTIA PLANS SHOULD BE APPOINTED LEAD PLAINTIFFS

Motions by proposed lead plaintiffs must be filed within 60 days after publication of the PSLRA notice (the "Notice") of an action, which in this case was published on June 2, 2026 (*see* Tuccillo Decl., Ex. B). *See* 15 U.S.C. §78u-4(a)(3)(A)(i)(II). The PSLRA directs courts to consider any such motion by the later of (i) 90 days after the date of notice publication (30 days after the motion deadline), or (ii) as soon as practicable after the Court decides any pending motion to consolidate. *See* 15 U.S.C. §78u-4(a)(3)(B)(i) & (ii). The Nova Scotia Plans' instant motion is thus timely and must be considered.

When faced with competing lead plaintiff motions, under 15 U.S.C. §78u-4(a)(3)(B), the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members (hereinafter…the 'most adequate plaintiff')." *See* 15 U.S.C. §78u-4(a)(3)(B)(i). The Nova Scotia Plans respectfully submit that they are the "most adequate plaintiffs" within the PSLRA's meaning and should therefore be appointed to serve as Lead Plaintiffs.

To guide this determination, the PSLRA creates a rebuttable presumption that the "most adequate plaintiff" "is the person or group of persons that" (i) either filed the complaint or made a lead plaintiff motion; (ii) "in the determination of the court, has the largest financial interest in the relief sought by the class"; and (iii) otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(aa)-(cc). As set forth below, the Nova Scotia Plans satisfy all three of these criteria and thus believe that they are entitled to the PSLRA's rebuttable presumption that they are the most adequate plaintiffs. Specifically, the Nova Scotia Plans are sophisticated institutional investors, and moreover pension funds, which are willing to serve as lead plaintiffs, have the

6

largest financial interest in the Action to their knowledge, and otherwise strongly satisfy Rule 23's requirements.

For all these reasons, as detailed below, the Nova Scotia Plans respectfully urge the Court to appoint them to serve as Lead Plaintiffs overseeing this Action.

**1.        The Nova Scotia Plans Are Willing to Serve as Class Representatives**

On June 2, 2026, counsel for the initial plaintiff in the Action caused the statutorily required Notice to be published via *ACCESS Newswire* pursuant to PSLRA §21D(a)(3)(A)(i), announcing that the Action had been filed against Defendants and advising investors in Badger Meter common stock that they had 60 days from the Notice's publication date—*i.e.*, until August 3, 2026—to file a motion to be appointed as lead plaintiff.  *See* Tuccillo Decl., Ex. B.

The Nova Scotia Plans respectfully file this motion pursuant to the Notice and have attached Certifications signed by Steve Mahoney, as Chief Investment Officer of the Nova Scotia Pension Services Corporation ("NS Pension"), submitted together as Tuccillo Decl., Ex. C.  NS Pension is PSSP's Administrator pursuant to the Nova Scotia Pension Services Corporation Act and Public Service Superannuation Act and PSSP's Third Amended And Restated Administration Services And Investment Management Agreement.  *See* PSSP Certification at ¶¶2-3.  Further, NS Pension is TPP's Plan Administrative Agent pursuant to the Nova Scotia Pension Services Corporation Act and Teachers' Pension Act and TPP's Sixth Amended And Restated Administration Services And Investment Management Agreement.  *See* TPP Certification at ¶¶2-7.  As attested in the Nova Scotia Plans' respective Certifications, NS Pension is duly authorized by statutes and agreements to enter the Nova Scotia Plans into legally binding agreements, to retain legal counsel, and to initiate, oversee, and resolve litigation by the Nova Scotia Plans to recover investment losses in their respective pension assets, including the investment losses incurred in connection with the fraud alleged in this litigation.  *See* PSSP Certification at ¶¶2-4; TPP

7

Certification at ¶¶2-7.  Under the PSLRA, the Nova Scotia Plans' actions were timely and legally sufficient.  Accordingly, the Nova Scotia Plans readily satisfy the first requirement to serve as Lead Plaintiffs for the Class.

The Nova Scotia Plans are, in every respect, exactly the sort of well-managed, sophisticated institutional investors that Congress intended to fulfill the lead plaintiff role created by the PSLRA. The Nova Scotia Plans, registered defined benefit pension plans, are two of the largest public sector pension plans in Atlantic Canada, with prescribed funding policies, which offer their members a lifetime pension when they retire.  As of December 31, 2025, PSSP serves 46,198 members, including 21,667 active members, 20,259 retirees, and 4,272 deferred members, consisting of workers in a Nova Scotia government department or at a participating municipality, university, agency, board, or commission.  As of December 31, 2025, TPP serves 35,891 members, including 14,442 retirees, 14,283 active members, and 7,166 inactive members, consisting of employees of nearly a dozen Nova Scotia education entities.  As of March 31, 2026, PSSP was 105.5% funded, with CAD $8.661 billion in assets, invested in a diversified manner, including 31.30% in equities. As of December 31, 2025, TPP was 86.8% funded, with approximately CAD $6.511 billion in assets, invested in a diversified manner, including 35.46% in equities.  As recent years, PSSP and TPP has ranked amongst the top Canadian peers for absolute returns.

The Nova Scotia Plans' oversight and administration is well-defined, multitiered, and robust.  The Public Service Superannuation Plan Trustee, Inc. ("PSSPTI") and the Teachers' Pension Plan Trustee Inc. ("TPPTI") are PSSP's and TPP's Trustees, respectively, with fiduciary responsibility for the Nova Scotia Plans, including their overall operations and investment of their assets.  Both PSSPTI and TPPTI have Boards of Directors with independent Chairs, representing participating unions, non-union employees, the Nova Scotia government, and other employers.

NS Pension, as PSSP's Administrator and TPP's Plan Administrative Agent, fulfills express statutory and contractual responsibilities, including undertaking securities litigation on the Nova Scotia Plans' behalf, thus ensuring that the prosecution of the Nova Scotia Plans' and the Class's claims in this litigation will be overseen by qualified professionals. *See* PSSP Certification at ¶¶2-4; TPP Certification at ¶¶2-7. NS Pension, under PSSPTI's and TPPTI's direction, also manages day-to-day operation of the Nova Scotia Plans' investments and administration. NS Pension itself has an eight-person Board with four seats each held by PSSPTI representatives and TPPTI representatives, as well as a Senior Management Team and over 80 staff members.

### 2. The Nova Scotia Plans are the Most Adequate Plaintiffs Within the PSLRA's Meaning

When faced with competing lead plaintiff motions, under 15 U.S.C. §78u-4(a)(3)(B), the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members (hereinafter… the 'most adequate plaintiff')." *See* 15 U.S.C. §78u-4(a)(3)(B)(i). The Nova Scotia Plans are the "most adequate plaintiffs" within the PSLRA's meaning and should therefore be appointed to serve as Lead Plaintiffs.

### a. The Nova Scotia Plans Have the "Largest Financial Interest" in the Action

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff…is the person or group of persons that…has the largest financial interest in the relief sought by the class[.]" 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb). To the best of their knowledge, the Nova Scotia Plans have the largest financial interest of any Badger Meter investor or investor group seeking to serve as Lead Plaintiff. For claims arising under Exchange Act §10(b), courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*, No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11,

1997): (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.  In accord with other courts nationwide, these so-called *Lax* factors have been adopted and routinely applied by courts in this Judicial District.  *See, e.g.*, *Chahal v. Credit Suisse Grp. AG*, No. 18-CV-2268 (AT) (SN), 2018 WL 3093965, at *4 (S.D.N.Y. June 21, 2018); *Nurlybaev v. ZTO Express (Cayman) Inc.*, No. 17-CV-06130 (LTS) (SN), 2017 WL 5256769, at *1 (S.D.N.Y. Nov. 13, 2017); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 404 (S.D.N.Y. 2004).

During the Class Period, the Nova Scotia Plans, in the aggregate: (1) purchased or acquired 7,810 shares of Badger Meter common stock; (2) purchased or acquired 0 net shares of Badger Meter common stock (having sold all of their Badger Meter holdings after the first of three alleged corrective disclosures dated July 22, 2025, at which time they held 6,220 shares of Badger Meter common stock); (3) expended $264,591 in net funds on Badger Meter common stock; and (4) incurred losses of approximately $264,591.  *See* Tuccillo Decl., Ex. A.  Thus, under the *Lax* factors, the Nova Scotia Plans believe they have the largest financial interest among any potential lead plaintiff movants in this litigation, thereby satisfying the first statutory criterion entitling the Nova Scotia Plans to a rebuttable presumption that they are the "most adequate plaintiffs" within the PSLRA's meaning (15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb)), given that they also satisfy Rule 23's requirements.

### b.    The Nova Scotia Plans Otherwise Satisfy Rule 23's Requirements

For a lead plaintiff movant to secure the PSLRA's rebuttable presumption that it is the "most adequate plaintiff," it must also demonstrate that it "otherwise satisfies the requirements of Rule 23[.]"  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).  At this stage of the inquiry, courts need

10

only consider typicality and adequacy.  *See Kaplan v. Gelfond*, 240 F.R.D. 88, 94 (S.D.N.Y. 2007); *see also In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) ("Typicality and adequacy of representation are the only provisions [of Rule 23(a)] relevant to a determination of lead plaintiff under the PSLRA.").

The Nova Scotia Plans satisfy the threshold for Rule 23(a)(3) typicality, which "is satisfied if 'each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *In re Orion Sec. Litig.*, No. 08 Civ. 1328 (RJS), 2008 WL 2811358, at *5 (S.D.N.Y. July 8, 2008) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).  "[T]he claims of the class representative need not be identical [to] those of all members of the class.  '[T]he typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members.'"  *Janbay v. Canadian Solar, Inc.*, 272 F.R.D. 112, 120 (S.D.N.Y. 2010) (quoting *Bishop v. N.Y. City Dep't of Hous. Pres. & Dev.*, 141 F.R.D. 229, 238 (S.D.N.Y. 1992)).  The Nova Scotia Plans' claims are typical of the Class members' claims.  Like all Class members, the Nova Scotia Plans allege that: (1) Defendants violated the Exchange Act by making false or misleading statements of material facts and/or omitting to disclose material facts concerning Badger Meter; (2) the Nova Scotia Plans and the Class members purchased or acquired Badger Meter common stock during the Class Period at prices allegedly inflated by Defendants' misrepresentations or omissions; and (3) the Nova Scotia Plans and the Class members were damaged upon incremental revelation of truth about Badger Meter's business and operations, which drove Badger Meter's stock price downward.  These shared claims, which are based on the

11

same legal theories and arise from the same underlying facts and course of conduct, demonstrate the Nova Scotia Plans' typicality under Rule 23(a)(3).

The Nova Scotia Plans also satisfy the Rule 23(a)(4) adequacy requirement, which is satisfied where "(1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011); *see also Dookeran v. Xunlei Ltd.*, No. 18-cv-467 (RJS), 2018 WL 1779348, at *2 (S.D.N.Y. Apr. 12, 2018) (same). Here, the Nova Scotia Plans' signed Certifications declare their commitment to protect the Class's interests. *See* Tuccillo Decl., Ex. C. The Nova Scotia Plans have no conflicts of interest or antagonism with the Class of Badger Meter investors they seek to represent. The Nova Scotia Plans' significant losses from their investments in Badger Meter common stock demonstrate that they have a sufficient interest in the litigation's outcome that aligns with Class member interests.

As noted above, the Nova Scotia Plans are also large pension funds and sophisticated institutional investors with significant assets under management. Their service as Lead Plaintiffs would satisfy the PSLRA's express legislative intent. In enacting the PSLRA, Congress intended to "increas[e] the role of institutional investors in class actions" to "benefit shareholders and assist courts by improving the quality of representation in securities class actions." H.R. Conf. Rep. No. 104-369, at 34 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 733. Congress noted the outsized marketplace presence of institutional investors as creating a powerful incentive on their part to ensure securities litigation is well-conducted. *Id.* (noting that institutions held $9.5 trillion in total assets and 51% of the equity market when the PSLRA was passed and "have the most to gain from meritorious securities litigation"). Congress specifically highlighted the unique role of pension

12

funds, whose beneficiaries are themselves small investors, as particularly suited to lead securities class actions and protect class member interests. *Id.* (noting that pension funds held $4.5 trillion or nearly half of all institutional assets). To this end, courts in this Judicial District consistently recognize that Congress intended the PSLRA to place institutional investors like the Nova Scotia Plans in charge of securities class actions, recognizing the clear advantages of doing so. *See, e.g.*, *Glauser*, 236 F.R.D. at 188 ("[T]he PSLRA was passed, at least in part, to increase the likelihood that institutional investors would serve as lead plaintiffs in actions such as this one.") (quoting *In re Veeco Instruments*, 233 F.R.D. at 332-33); *Ophthotech*, 2018 WL 1307285, at *6 ("[C]ourts have a preference for appointing institutional investors as lead plaintiffs."); *In re Braskem S.A. Sec. Litig.*, 15 Civ. 5132 (PAE), 15 Civ. 5183 (PAE), 2015 WL 5244735, at *5 (S.D.N.Y. Sept. 8, 2015) (appointing as lead plaintiff "an institutional investor, the type of investor Congress prefers as lead plaintiff"); *In re Doral Fin. Corp. Sec. Litig.*, 414 F. Supp. 2d 398, 403 n.8 (S.D.N.Y. 2006) (appointing as lead plaintiff a "large institutional investor . . . precisely the type of plaintiff envisioned under the PSLRA").

### 3. The Presumption Favoring the Nova Scotia Plans Cannot Be Rebutted

The presumption favoring the Nova Scotia Plans' appointment as Lead Plaintiffs may be rebutted only upon proof "by a member of the purported plaintiff class" that the presumptively most adequate plaintiff:

(aa)    will not fairly and adequately protect the interests of the class; or

(bb)    is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. §78u-4(a)(3)(B)(iii)(II). The Nova Scotia Plans' ability and desire to fairly and adequately represent the Class has been discussed above and cannot be credibly disputed. The

13

Nova Scotia Plans are not aware of any unique defenses Defendants could raise that would render them inadequate to represent the Class.

## B.   LEAD PLAINTIFFS' SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). The Court should only interfere with a lead plaintiff's choice if necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa); *see also Kaplan v. S.A.C. Capital Advisors, L.P.*, 311 F.R.D. 373, 383 (S.D.N.Y. 2015) ("The PSLRA 'evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention.'") (quoting *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 398 (S.D.N.Y. 2008)).

The Nova Scotia Plans have selected Pomerantz to serve as Lead Counsel for the Class. Pomerantz is a premier firm, highly experienced in the areas of securities litigation and class action lawsuits, which has successfully prosecuted numerous such actions and recovered billions of dollars on behalf of investors over its 80+ year history, as detailed in its firm resume. *See* Tuccillo Decl., Ex. D. Pomerantz is based in New York, with offices in Chicago, Los Angeles, Paris, Tel Aviv, and London, and the firm regularly litigates federal securities fraud class actions in courts nationwide. As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz secured a recovery of $3 billion on behalf of Petrobras investors, the second-largest class action settlement in the history of the Second Circuit, the largest settlement ever in a class action involving a foreign issuer, and the fifth largest class action settlement ever achieved in the U.S. *Id.* The Pomerantz Partner who will oversee this litigation, Matthew L. Tuccillo, has over 26 years of relevant experience, including recently as lead litigation counsel in a securities fraud class action lawsuit where a $40 million class-wide settlement was granted final approval in *In re*

*Emergent Biosolutions, Inc. Sec. Litig.*, No. 8:21-CV-00955-DLB, 2025 WL 654108, at *2 (D. Md. Feb. 27, 2025).  His work on other securities fraud class action lawsuits within the Second Circuit includes serving as lead litigation counsel in *Perez v. Higher One Holdings, Inc.*, No. 14-cv-00755-AWT, ECF 161 (D. Conn.) (court granted final approval to $7.5 million settlement) and *In re Silvercorp Metals, Inc.*, *Sec. Litig.*, No. 1:12-cv-09456, ECF 81 (S.D.N.Y.) (court granted final approval to $14 million settlement).

As a result of its extensive experience in litigation involving issues similar to those raised in the instant Action, the Nova Scotia Plans' choice of counsel, Pomerantz, has the skill, knowledge, expertise, resources, and experience that will enable it to prosecute this Action effectively and expeditiously.  The Court may be assured that by approving the Nova Scotia Plans' selection of Pomerantz as Lead Counsel, Class members will receive the best legal representation available.  Thus, the Nova Scotia Plans respectfully urge the Court to appoint their choice of counsel, Pomerantz, to serve as Lead Counsel.

## IV.    CONCLUSION

For the foregoing reasons, the Nova Scotia Plans respectfully request that the Court issue an Order: (1) appointing the Nova Scotia Plans as Lead Plaintiffs for the Class; and (2) approving the Nova Scotia Plans' selection of Pomerantz as Lead Counsel for the Class.

Dated:  August 3, 2026                    Respectfully submitted,

POMERANTZ LLP

*/s/ Matthew L. Tuccillo*
Matthew L. Tuccillo
Jeremy A. Lieberman
J. Alexander Hood II
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044

15

mltuccillo@pomlaw.com
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Lead Plaintiff Movants the Nova Scotia Public Service Superannuation Plan and the Nova Scotia Teachers' Pension Plan and Proposed Lead Counsel for the Class*

16

## CERTIFICATE OF WORD COUNT

The undersigned, counsel of record for the Nova Scotia Public Service Superannuation Plan and the Nova Scotia Teachers' Pension Plan, certifies that this brief contains 4,550 words, which complies with the word limit of Local Civil Rule 7.1(c) and Rule 4.B.i. of this Court's Individual Practices in Civil Cases.

Executed on August 3, 2026.

/s/ Matthew L. Tuccillo
Matthew L. Tuccillo

17